# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Melissa Hill,   Civil No. 12-738 MJD/AJB

        Plaintiff,

v.   **REPORT AND RECOMMENDATION**
   **ON MOTION TO DISMISS**
   **BY FEDERAL DEFENDANTS**

City of Minneapolis; Minneapolis
Police Department; Officer Amy Vreeland;
The United States Protective Service; FPS
Inspector Jesse Rodriguez; DECO, Inc.;
Timothy Sarkela, John Kangas; and
Michael Thoms,

        Defendants.

    Nadege J. Souvenir, William Z. Pentolovitch, and Teresa J. Nelson, for the plaintiff, Melissa Hill;

    David W. Fuller, Esq., Assistant United States Attorney, for defendants United States Federal Protective Service and Jesse Rodriguez.

    This action is before the court, Chief Magistrate Judge Arthur J. Boylan, on Motion to Dismiss [Docket No. 36] by defendants United States Federal Protective Service and FPS Inspector Jesse Rodriguez ("FPS" or "federal defendants"). Hearing on the motion was held on December 4, 2012, at the United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415. The case has been referred to the magistrate judge for report and recommendation under 28 U.S.C. §636(b)(1). It is the court's determination herein that the federal defendant's motion to dismiss should be granted in part and denied in part as further discussed herein.

**Fact Background and Claims**

Count I of the second amended complaint[1] in this case alleges that the federal defendants acted in violation of the Fourth Amendment by detaining plaintiff Melissa Hill after she was discovered writing in chalk on the sidewalk in front of the old Federal Building in Minneapolis, Minnesota. The federal defendants are not named as defendants in their individual capacities in the second amended complaint, though they were expressly sued in their individual and official capacities in the first amended complaint.[2] Plaintiff seeks declaratory and injunctive relief, as well as compensatory damages, possibly punitive damages, and attorneys' fees.

Plaintiff Melissa Hill alleges that she was walking on the sidewalk in front of the Federal Building[3] on the morning of June 9, 2011 when she noticed that a phrase written on the sidewalk in

---

[1] [Docket No. 29]. The amended complaint alleges a total of ten counts which are captioned as follows: Count I, Illegal Search and Seizure (Fourth Amendment)(Against FPS, Inspector Rodriguez, DECO, Timothy Sarkela, John Kangas, Michael Thoms and Officer Vreeland); Count II, Violation of Due Process Protections (Fourteenth Amendment)(Against the City); Count III, Violation of Due Process Protections (Fourteenth Amendment)(Against the City); Count IV, Violation of Freedom of Speech (First Amendment) (Against the City); Count V, Violation of Freedom of Speech (First Amendment) (Against the City); Count VI, Violation of Due Process Protections (Minnesota Constitution Article I Section 7)(Against the City); Count VII, Violation of Due Process Protections (Minnesota Constitution Article I Section 7)(Against the City); Count VIII, False Imprisonment (DECO, Timothy Sarkela, John Kangas, Michael Thoms); Count IX, Battery (DECO, Timothy Sarkela, John Kangas, Michael Thoms); and Count X, Assault (DECO, Timothy Sarkela, John Kangas, Michael Thoms).

[2] [Docket No. 3]. Plaintiff contends that the failure to allege individual liability in the second amended complaint was a oversight that she wishes to correct by another amended complaint if necessary. The court construes the pleading to include individual capacity claims.

[3] The Federal Building was largely vacant at the time of the incident as issue in this case. However, a passport office was located in the building and an military enlistment office was also

water erasable chalk had been modified. The statement "Don't Enlist Resist" had been partially erased and now simply read "Enlist." Ms. Hill decided to refresh the original statement and proceeded to rewrite the missing words, also using erasable chalk. While doing so she was instructed to stop by defendants Timothy Sarkela and John Kangas, both of whom were security guards at the Federal Building, employed by DECO, Inc., a private company that contracts with FPS to provide law enforcement services.[4] Sarkela and Kangas further placed Ms. Hill in handcuffs, took her backpack from her, and placed her in a room inside the Federal Building, where she was questioned. It is also alleged that Ms. Hill's backpack was searched and that Sarkela and Kangas' supervisor, Michael Thoms, participated in the decisions to detain and handcuff the plaintiff and search her belongings.

FPS was contacted promptly after the initial detention and FPS Inspector Jesse Rodriguez was dispatched to the Federal Building. He arrived at the scene approximately twenty minutes later. Inspector Rodriguez met with Ms. Hill and also questioned her and looked through her backpack. He did not remove the handcuffs. Ms. Hill was advised that security personnel knew that she had written the original chalk message based upon security camera video footage.

Thereafter, the Minneapolis Police Department was contacted and Officer Amy Vreeland arrived at the Federal Building approximately 45 minutes after Ms. Hill was initially detained. Officer Vreeland also spoke with the plaintiff and asked her questions. The officer issued Ms. Hill a

---

temporarily located in the facility.

[4] The second amended complaint acknowledges the contractual relationship between DECO and FPS, and that defendants Timothy Sarkela, John Kangas and Michael Thoms are employed by DECO. The complaint also appears to refer to the individuals as FPS agents. DECO, Sarkela, Kangas, and Thoms have answered the second amended complaint and are not presently moving to dismiss.

trespass notice and escorted her from the property, allegedly at the request of FPS agents. The trespass notice barred the plaintiff from the Federal Building property for one year, subject to criminal penalties for violation. Ms. Hill was not charged with any city, state or federal offense.

Claims against defendants FPS and Inspector Rodriguez are asserted only in Count I of the second amended complaint, wherein it expressly states that the claim is for violation of the Fourth Amendment and alleges that plaintiff's person was seized without reasonable suspicion that she had engaged in unlawful conduct. Count I further alleges that the plaintiff was targeted based upon the content of protected First Amendment speech.

The federal defendants did not answer the plaintiff's second amended complaint, but rather, moved to dismiss or, in the alternative, for summary judgment. In support of the motion it is argued that sovereign immunity bars any claim for money damages against FPS and Inspector Rodriguez in an official capacity and claims for declaratory and injunctive relief are either moot or are based upon speculative future injuries. Defendant Rodriguez also contends that he is entitled to qualified immunity from suit against him in an individual capacity. In support of their motion to dismiss, the federal defendants submit the Declaration of Jesse Rodriguez which contains fact assertions which were not stated in the amended complaint.[5]

Plaintiff opposes dismissal of the federal defendants, arguing that the defendants have

---

[5] Additional facts include Inspector Rodriguez's statement as to how he became aware of the chalk writing; his knowledge of the history of protests at the old Federal Building; information provided by the security guards regarding their observations and Ms. Hill's detention, including a report that the initial backpack search was standard procedure x-ray security screening; and his determination that a federal citation was not warranted and the Minneapolis Police Department would be contacted. The declaration also indicates that Ms. Hill refused to identify herself to security guards or Inspector Rodriguez and she first identified herself to Officer Vreeland.

improperly submitted additional facts by way of affidavit in support of their motion to dismiss, essentially seeking summary judgment treatment and fact evaluation of the claims without affording plaintiff an opportunity for discovery. Ms. Hill insists that the claims against the federal defendants are sufficient on the face of the pleadings to survive motions to dismiss under Fed. R. Civ. P. 12(b)(1)(lack of subject matter jurisdiction) and Rule 12(b)(6)(failure to state a claim).

**Official Capacity Claims**

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction the defendant must successfully challenge the complaint either on its face or through an attack on truthfulness of the factual allegations. Ringsred v. City of Duluth, 187 F.Supp.2d 1141, 1153 (D. Minn. 2001). In a facial challenge to subject matter jurisdiction the fact allegations are accepted as true and court merely asks whether jurisdiction exists under the circumstances. Id. (citing Deuser v. Vecera, 139 F.3d 1190, 1191 (8th Cir. 1998) and Berkovitz v. United States, 486 U.S. 531, 540, 108 S.Ct. 1954 (1988)).

**Sovereign Immunity.** The FPS defendants contend that sovereign immunity bars claims against them to the extent that plaintiff may be seeking money damages for actions taken by them in their official capacities. Plaintiff Hill does not specifically address the matter of money damages as a remedy for injuries resulting from official capacity actions by the federal defendants, but insists that she has a claim for declaratory and injunction relief prohibiting defendants from interfering with her constitutional rights.

Sovereign immunity protects federal officials from claims against them in their official capacities unless a waiver of such immunity is "unequivocally expressed." Hagemeier v. Block, 806

F.2d 197, 202 (8th Cir. 1986) (quoting United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351 (1980), and United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502 (1960)). If a judgment in a suit would require expenditure from the public treasury, interfere with public administration, or effectively restrain the government from acting, or compel government action, the suit is against the sovereign. Hagemeier at 202 (citing Dugan v. Rank, 372 U.S. 09, 620, 83 S.Ct. 999, 1006 (1969) (additional citations omitted). An official capacity lawsuit against a federal official is to be treated as a suit against the public entity. Id.

  The United States Federal Protective Services is an agency of the federal government and suit against the agency is essentially a suit against the United States. The plaintiff makes no allegation in the operative complaint or in opposition to the motion that the United States or FPS have waived immunity and any claims for a money judgment against FPS is therefore barred. Likewise, Inspector Rodriguez is a federal official with respect to whom an official capacity suit must be treated as a suit against the United States and there is no waiver of immunity. It does not appear that plaintiff is seeking monetary damages from the federal defendants for actions taken in an official capacity, but to the extent such a claim may be asserted, dismissal is appropriate.

  **Declaratory and Injunctive Relief.** Plaintiff contends that sovereign immunity from claims for declaratory and injunctive relief has been waived under 5 U.S.C. § 702, therein explicitly precluding dismissal of official capacity claims for non-monetary relief on the mere ground that the suit is against the United States. With respect to a claim for injunctive relief, the government does not contend that sovereign immunity applies but argues that the one-year notice of trespass has expired by its own terms, and circumstances are not such that the situation is capable of repetition, yet evading review.

Therefore, enjoining enforcement of the notice is unnecessary and the issue is essentially moot. Furthermore, the government argues that the plaintiff lacks standing to seek declaratory relief on Fourth Amendment claims because her claims are vague and speculative as to future injury, particularly regarding actions by Inspector Rodriguez. Plaintiff simply insists that she wants to continue exercising her First Amendment rights, and since she has now been branded an "antiwar advocate," she fears future detention and issuance of a trespass order should she attempt to exercise those rights.

It is undisputed that the one-year trespass notice issued on June 9, 2011 has expired and Ms. Hill can no longer be held accountable for violation of the notice. As to whether injunctive relief may be obtained on the basis of a situation that is "capable of repetition, yet evading review," it must be shown that (1) there is a reasonable expectation that this plaintiff will be subjected to the same action again, and (2) the challenged action must be of such short duration that it cannot be fully litigated before becoming moot. Ringo v. Lombardi, 677 F.3d 793, 798 (8th Cir. 2012). "A mere 'physical or theoretical possibility' is insufficient; a 'demonstrated probability' must be shown." Id. (quoting McFarlin v. Newport Special Sch. Dist., 980 F.2d 1208, 1211 (8th Cir. 1992) and Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181 (1982).

Plaintiff Melissa Hill has asserted little more than that she would like to exercise her First Amendment rights in the future and she doesn't want to be detained or be subjected to a trespass notice for doing so. Arguably, the Constitution itself is sufficient protection to provide that relief. Beyond that, the plaintiff offers no specifics as to particular locations, or types of locations, at which the FPS might wrongfully interfere with her actions; and she does not indicate the nature, content, or

7

medium[6] of her intended First Amendment expressions. There is absolutely no demonstrated probability that Ms. Hill will engage in essentially the same conduct in the future and there is no reasonable expectation that the same defendants[7] would subject her to the same consequences for the same behavior. Furthermore, plaintiff makes no showing that any future case involving restrictions imposed on her for exercising her constitutional rights could not be litigated before becoming moot. Plaintiff has not alleged sufficient justification to proceed on a claim for injunctive relief against the federal defendants and her official capacity claims should be dismissed in that respect.[8]

Plaintiff also seeks a declaration that the defendants violated her rights under the United

---

[6] This case involves erasable chalk writing on a sidewalk. The request for injunctive relief contains no limitations whatsoever on the means by which the plaintiff may wish to express herself in the future, and it certainly cannot be said that there are no circumstances under which erasable chalk writing would not be unprotected under the First Amendment. See Mahoney v. District of Columbia, 662 F.Supp.2d 74 (D. D.C. 2009) (defacement statute prohibiting "chalk art" in public area in front of White House not a violation of constitutional rights) (aff'd Mahoney v. Doe, 642 F.3d 1112, 1122 (D.C. Cir. June 21, 2011).

[7] Inspector Rodriguez retired from federal service in July 2011. Decl. ¶ 1 [Docket No. 39].

[8] As discussed herein, an essential flaw in plaintiff's demand for injunctive relief is the lack of particularity or clarity as to FPS actions that can or might be enjoined. At the hearing on the motion to dismiss there was colloquy among the court and counsel concerning an FPS 3155 incident report, possible dissemination of the report, and the affect of such dissemination with respect to any future First Amendment activities in which the plaintiff may be engaged. The second amended complaint alleges that the FPS incident report was produced to the plaintiff pursuant to a Freedom of Information Act request, and the document refers to her as "an antiwar advocate." Second Amd. Compl. ¶¶ 39-40. Plaintiff indicated that she wanted to conduct additional discovery in regards to the reports. However, counsel for FPS correctly noted that even though the second amended complaint refers to the FPS incident report, the pleading does not allege a claim for expungement or other injunctive relief specifically with respect to FPS reports. Therefore, even though the court concludes that a claim for injunctive relief against FPS should be dismissed, a timely motion for leave to amend the complaint to allege specific and particularized relief as to use and dissemination of FPS incident reports, or information contained in the reports, would be considered by the court.

States and Minnesota constitutions, and that Minn. Stat. § 609.605 (trespass statute) and Minneapolis Code § 385.380 (city trespass ordinance) are unconstitutional on their face and as applied.[9] In addition, she states that she seeks a declaration that "[d]efendants have violated the guarantees against reasonable searches and seizures, due process of law, and freedom of speech of the First, Fourth and Fourteenth Amendments of the United States Constitution."[10] Defendants argue that plaintiff lacks standing with respect to her claims for declaratory relief because she fails to establish the existence of an actual controversy where the allegations of a threat of future injury are wholly speculative.

To establish standing a plaintiff must show that "[s]he has suffered [an] injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." County of Mille Lacs v. Benjamin, 361 F.3d 460, 463 (8th Cir. 2004) (quoting Bennett v. Spear, 520 U.S. 154, 162, 117 S.Ct. 1154 (1997)). Although a declaratory judgment action may be maintained in the absence of an actual wrong having been committed, or a actual loss having occurred, allegations of speculative harms based upon assumed future conduct by the plaintiff are insufficient to establish injury in fact for standing purposes. Id. at 464. Injury in fact is a "concrete and particularized" invasion of at legally protected interest. Burton v. Central Interstate Low-Level Radioactive Waste Compact Commission, 23 F.3d 208, 209 (8th Cir. 1994) (affirming dismissal of claims for declaratory and injunctive relief) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136 (1992)). Less specificity is required at the pleading stage, but a complaint must contain more than mere assertions of possible injury to survive a

---

[9] Second Amd. Compl., p. 20.

[10] Pl. Mem. in Opp., p. 5.

motion to dismiss. Id. at 210. A claim that an undefined interest of the plaintiff may be affected in some uncertain way is insufficient to establish standing. Id, (citing Lujan, 112 S.Ct. at 2136).

In seeking declaratory relief the plaintiff generally alleges that defendants violated certain constitutional rights, that certain trespass statutes and ordinances are unconstitutional, and based upon such declaratory relief, defendant should be enjoined from enforcing trespassing statutes and thereby interfering with her constitutional rights. The second amended complaint contains absolutely no concrete indication of actions in which plaintiff expects to engage in the future and no concrete and particularized allegation of an injury in fact that might be inflicted upon her by these defendants. The allegations are completely unspecific and speculative and the pleading falls woefully short of establishing real or threatened injury, caused by defendants in this case. Plaintiff's has not established controversy or standing to assert her claim for declaratory relief. The federal defendants' motion to dismiss plaintiff's official capacity claim for declaratory relief on her Count I claim should be granted.

**Standard of Review on Rule 12(b)(6) Motion**

A complaint that is being challenged on motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) does not need to contain detailed factual allegations to survive the motion, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). A complaint must contain sufficient facts to state a claim that is not merely conceivable, but rather, is plausible. Twombly, 127 S.Ct. at 1974. When reviewing a motion to dismiss, the claim must be liberally construed, assuming the facts alleged therein to be true and drawing all reasonable inferences from those facts in the plaintiff's favor.

Twombly, 127 S.Ct. at 1964-65.  A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein.  Id.  Accordingly, a well-pleaded complaint will survive a motion to dismiss even where the likelihood of recovery appears remote.  Id. at 1965.  However, a plaintiff cannot rely upon general and conclusory allegations to survive a Rule 12(b)(6) motion.  Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985).

When matters outside the pleadings are presented with a Rule 12(b)(6) motion, and those matters are not excluded by the court, the motion should be treated as a Fed. R. Civ. P. 56 motion for summary judgment.  However, on a motion to dismiss for failure to state a claim, the court may consider extraneous materials that are outside the complaint if such materials are "necessarily embraced" by the pleadings. Piper Jaffray v. Nat'l Union Fire Insur. Co., 967 F.Supp. 1148, 1152 (D. Minn. 1997) (citing Vizenor v. Babbitt, 927 F.Supp. 1193, 1198 (D. Minn. 1996)).  See also  Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 n.9 (8th Cir. 1997).

In support of their motion to dismiss, the federal defendants have submitted the Declaration of Affidavit of FPS Investigator Jesse Rodriguez in which the declarant offers additional information and commentary relating to the plaintiff's detention at Federal Building and his involvement in this matter.  The declaration contains fact assertions which are outside the scope of the pleadings in this matter and which the court declines to consider in its decision on the Rule 12(b)(6) motion to dismiss.  The motion will not be treated as Rule 56 summary judgment motion.

**Qualified Immunity.**  FPS Inspector Jesse Rodriguez contends that he is entitled to qualified immunity from liability for claims against him in his individual capacity.  The doctrine of

11

qualified immunity protects a defendant from liability for alleged misconduct which he reasonably believed to be lawful or which was not clearly established as unlawful at the time the conduct occurred. The Supreme Court has long held that a government officer sued in his or her individual capacity "may assert personal immunity defenses, such as objectively reasonable reliance on existing law." Hafer v. Melo 502 U.S. 21, 25; 112 S.Ct. 358, 362 (1991). Thus, government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," are shielded from liability for civil damages. Hartley v. Fine, 780 F.2d 1383, 1387 (8th Cir. 1985) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity is immunity from suit rather than a mere defense and should be decided by the court well before trial, though the plaintiff is to be given the benefit of all relevant inferences on summary judgment, and a party is not entitled to summary judgment on qualified immunity grounds where genuine dispute exists concerning predicate facts material to the issue. Wiegand v. Spadt, 317 F.Supp.2d 1129, 1137 (citing Pace v. City of Des Moines, 201 F.3d 1050, 1056 (8th Cir. 2000)). "Predicate facts" consist of only the relevant circumstances and the acts of the parties themselves, and do not include the conclusions of others with regard to the reasonableness of those actions. Wiegand at 1137 n.3 (citing Pace, 201 F.3d at 1056). Although the reasonableness of an officer's conduct for qualified immunity purposes is a determination of law that should be made at the earliest possible stage of the case, the determination requires the absence of dispute as to relevant facts. Id. at 1137.

In considering qualified immunity the court considers (1) whether the facts alleged, construed in the light most favorable to the party opposing its application, establish a violation of a constitutional right, and (2) whether such right was clearly established such that a reasonable officer

12

would have known the actions were unlawful. El-Ghazzawy v. Berthiaume, 636 F.3d 452, 456 (8th Cir. 2011). The court has discretion as to which factor to consider first. Id. (citing Dodd v. Jones, 623 F.3d 563, 566-57 (8th Cir. 2010)(citing Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 818 (2009)). Qualified immunity will be denied if there is a genuine issue of material fact regarding whether a reasonable officer could have believed the action at issue was lawful. Id. (citing Nance v. Sammis, 586 F.3d 604, 609 (8th Cir. 2009)). Whether a constitutional right is clearly established "is a fact-intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 459 (quoting Seymour v. City of Des Moines, 519 F.3d 790, 798 (8th Cir. 2008)).

The court fully recognizes that early determination on qualified immunity is appropriate and an early determination, prior to extensive discovery, is encouraged. Nonetheless, while entitlement to qualified immunity is determined as a matter of law, that determination is often significantly fact based and specific to the particular facts of the case at hand. The defendant urges the court to consider additional facts contained in the Declaration of Jesse Rodriguez and decide the matter now, either on the grounds that Inspector Rodriguez's involvement was so minimal as to justify dismissal under Rule 12 standards, or pursuant to summary judgment analysis.

The court is persuaded that a decision as to whether to dismiss individual capacity claims against Inspector Rodriguez is premature. This matter unquestionably has important constitutional implications, particularly with respect to circumstances under which the plaintiff was detained and placed in handcuffs, and was kept in handcuffs during a time in which she had not been arrested. See El-Ghazzawy v. Berthiaume, 636 F.3d 452, 459 ("It is well settled that, under the Fourth

Amendment, '[t]he scope of a detention should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.'" (citations omitted)). In the same vein, the search of plaintiff's backpack may present constitutional issues as to the scope of the investigation. The court does not herein conclude that Inspector Rodriguez is not entitled to qualified immunity, but the circumstances of this case are such that a determination should not be made without plaintiff being given the opportunity to conduct some discovery, especially in light of the First Amendment overtones that pervade the Fourth Amendment claims. A primary purpose of the qualified immunity defense is to protect government officials from the burdens of trial and discovery. Lovelace v. Delo, 47 F.3d 286, 287 (1995). Even though some predicate facts have been alleged in this matter, qualified immunity is typically considered on motion for summary judgment and generally involves consideration of facts elicited though at least some additional discovery. See Ashcroft v. Iqbal, 129 S.Ct. at 1953. Consequently, the court declines to recommend dismissal of defendant Rodriguez on qualified immunity grounds on a Rule 12 motion.

Based upon the file and records in this action, along with the motions, memorandums, and arguments of counsel, the magistrate judge makes the following:

### RECOMMENDATION

It is **hereby recommended** that:

1. The Motion to Dismiss or, in the alternative, Summary Judgment by defendants FPS and Inspector Jesse Rodriguez be **granted in part and denied in part** [Docket No. 36] as further provided herein;

2. The motion to dismiss Count I claims against FPS and Inspector Jesse Rodriguez

for actions taken in an official capacity be **granted**;

       3.  Defendant FPS be **dismissed** as a defendant in this action; and

       4.  The motion to dismiss Count I individual claims against Inspector Jesse Rodriguez on qualified immunity grounds be **denied** without prejudice.


Dated:   December 26, 2012

                                              s/Arthur J. Boylan
                                              Arthur J. Boylan
                                              United States Chief Magistrate Judge


     Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before January 10, 2013.

     Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.